ROBERT W. KENNEDY COMPANY AND PENNSYLVANIA
RAILROAD COMPANY, APPELLANTS, v. BOARD OF PUB-
LIC UTILITY COMMISSIONERS ET AL., RESPONDENTS.

TRENTON AND MERCER COUNTY TRACTION CORPORA-
TION AND CENTRAL TRANSPORTATION COMPANY,
APPELLANTS, v. BOARD OF PUBLIC UTILITY COMMIS-
SIONERS ET AL., RESPONDENTS.

Argued October 28, 1925—Decided February 1, 1926.

1. A strip of land running from fifty to two hundred feet in width,
   owned by a railroad company and contiguous to its traveled right
   of way, held to be subject to the jurisdiction of the board of
   public utility commissioners to require a spur to be laid
   thereon, though temporarily rented out by the railroad for mer-
   cantile purposes.
2. Requirement in the order of the board that petitioner for the
   spur, as a condition, bear any reasonable expense of any neces-
   sary rearrangement of the business facilities of the tenant of the
   strip, located thereon, *held* valid under the circumstances of the
   case.

On appeals from affirmance of an order of the board of
public utility commissioners, whose decision is reported in
11 *P. U. Rep.* 567, on *certiorari* to the Supreme Court, whose
*per curiam* is reported in 3 *N. J. Mis. R.* 414.

For the Robert W. Kennedy Company, *Henry M. Hart-
mann.*

For the Pennsylvania Railroad Company, *Charles E. Gum-
mere.*

For the Trenton and Mercer County Traction Company
and Central Transportation Company, *Edgar W. Hunt.*

For the Board of Public Utility Commissioners, *Thomas
Brown.*

The opinion of the court was delivered by

PARKER, J. These are appeals by the owners or occupiers of adjoining lands in the city of Trenton, which further adjoin land of the railroad company, and by that company as well. The controversy arises out of the desire of the traction company and transportation company to obtain a switch connection with the railroad tracks over land owned by the railroad company, but leased by it to the Kennedy company by written lease terminable on sixty days' notice. The utility board, acting under powers conferred by the act (*Pamph. L.* 1911, *p.* 378, § 16—*K*), awarded the connection subject to certain requirements for compensation which will be considered later in more detail.

Inasmuch as our decision should not be taken in any broader sense than is required by the facts of the case, a specific statement of those facts at this point is essential.

The lands in question are in the city of Trenton, somewhat over half a mile northward of the main passenger station of the railroad, and lie between the main railroad tracks and East State street, to the southward or westward of Olden avenue. At this locality State street and the railroad are nearly parallel. The Kennedy company occupies a tract fronting about two hundred and eighty feet on East State street and, roughly speaking, about three hundred and fifty feet in depth. The traction and transportation companies occupy a tract adjoining on the eastward, about two hundred and ten feet front and of similar depth to the Kennedy tract. Back of these two tracts, and between them and the railroad tracks, lies the storm centre of the controversy, a strip about one thousand feet long, about fifty feet wide at the westerly end, and widening to about two hundred feet at the easterly end, which bound on Olden avenue or a production thereof. This strip is owned by the railroad company and is under lease to Kennedy company, as stated. That company is in the coal and lumber business and enjoys a spur of its own leading from the railroad southerly across the leased strip back of the traction company tract, entering the main Kennedy tract at its northeasterly corner and running to the

lumber sheds, &c., on State street. In its passage diagonally across the leased tract it passes over a sunken coal pocket maintained by Kennedy. There is also on the leased tract a planing mill, adjoining the northeast corner of the traction company lot. The proposed new spur as approved by the board would cross the leased tract diagonally in a southerly direction, passing between the planing mill and coal pocket, where there is an open space of about twenty feet, now used by the Kennedy company for a driveway. A railroad track would not materially interfere with the use of the driveway, though it is possible that the weight of engines and cars might require strengthening of the concrete retaining wall of the coal pocket. The anticipated use by the traction and transportation companies is one hundred cars per year, in and out, or about one car every three days, and it is plain that such use at a proper speed, with appropriate safeguards, would not cause any material interference with the Kennedy business.

On this branch of the case, which involves the three points made by the railroad and Kennedy companies, of statutory jurisdiction, deprivation of property and sufficiency of the evidence to support the order of the board, we are in accord with the views expressed by the Supreme Court, and have little or nothing to add to them. Granting the right of the railroad to demise for the time being real property not immediately needed for its use, it cannot, by such a proceeding as that exhibited here, contract away its liability to perform a public duty to an abutting owner. The case of *Armstrong* v. *Pennsylvania Railroad Co.,* 38 *N J. L.* 1, was cited by the Supreme Court. That was a case of a canal corporation selling surplus water which it had the right to take for canal purposes, and Chief Justice Beasley said (at *p. 3*):

"Such privileges, originating in politic considerations, cannot be either hampered or frittered away by engagements or concessions, but must be retained in the hands of the corporation, to be applied exclusively to the objects for the promotion of which they were bestowed."

As a legitimate corollary, one obtaining temporary private use of railroad land devoted to public uses, takes it with

knowledge that it is subject to the public burden. If the railroad could defeat that public right by renting out a fifty-foot strip, it could by the same token accomplish a similar result by renting out a five-foot or a one-foot strip. Whether there be a failure of consideration, or eviction, or what not, as between the railroad and Kennedy, is a question not specifically before us.

This disposes of the appeals by the railroad company and the Kennedy company. As to the cross-writs, the Supreme Court dismissed them without extended discussion, and it is earnestly argued here that this was error. This branch of the case relates to the action of the board in carrying out the behest of the statute that the switch connection if ordered should be authorized "upon reasonable terms." The views expressed by the board on this point should be read:

"The statute provides that the board may order the connection 'upon reasonable terms.' It appears that a siding from the petitioner's land may readily be connected with existing sidings on the land in question, and that its construction will not destroy the use of the land by the Kennedy company for its present purposes. The business of the Kennedy company has been carried on for a number of years in this locality. It appears that the use of this land is desirable for its purposes, and that various improvements have been made upon the property by it for the purposes of its business. It is proper and desirable for the lumber company to continue to use this property, as such use furnishes a considerable amount of revenue to the railroad company by way of freight charges, rentals and payments of taxes on the property. The construction of the siding will not require the total vacation of the leased property for that purpose, but only a right to cross same. The board deems it reasonable, in view of all the circumstances, that the applicant for the siding should be required to bear any reasonable expense incident to the construction of the siding, including any necessary rearrangement of the facilities erected upon the property by the Kennedy company. An order will issue for the construction of said siding subject

to this condition. If the parties cannot agree as to the reasonable amount of such expense, an application may be made to the board to settle that aspect of the matter."

Order was made accordingly. It does not in terms reserve the right of further application in case of disagreement as to amount of expense, but that was not necessary, as the jurisdiction remained with the board.

This phase of the order is attacked on four grounds—(a) that there was no evidence that any rearrangement of the Kennedy company facilities would be required; (b) that the board had no jurisdiction to require petitioners to bear any expense of alteration in the Kennedy plant; and in connection with this, that the word "terms" does not include any matters except those arising directly between petitioners and the railroad company, excluding Kennedy; and further, that Kennedy had "no legal rights" in the matter; (c) that, in any event, only "reasonable" terms could be imposed (to which we, of course, accede); (d) that the condition accords to Kennedy company rights which neither the lease nor the law entitles it, and "violates the law and public policy of the state."

These points appear to be argued for the traction company and the transportation company as though the board had already determined that the spur would require extensive demolition and rearrangement of existing buildings on the leased strip, and entail an expense of many thousand dollars. But the board has done nothing of the kind. We incline to agree (a) that there is no evidence at this time of any consequence that any rearrangement will be needed. A track must be laid, probably coinciding with the driveway, for a short distance, but over open land. Much depends on whether the spur is laid as we have indicated, or, for instance, cuts through the middle of the planing mill. So far as appears by anything before us, the board has not determined the location of the spur beyond saying that it is to cross the leased strip  If and when that location is fixed, it will be time enough to consider what "rearrangement," if any, will be "necessary"; (b d) assuming that

something in that line will be required, has Kennedy any "rights" which the board was entitled to consider by way of imposing "reasonable terms?" The position of counsel seems to be, in effect, that Kennedy is a mere squatter, to be ejected without ceremony in favor of a newcomer. But we do not so view the matter. If the leased tract had been vacant except for petitioner's spur, it might well be argued that the railroad could lease it to Kennedy subject to the easement of the spur—for, after all, what petitioner will acquire is but an easement of way over land of the railroad. Petitioners argued that it is unreasonable and illegal to require them to pay Kennedy company anything, but must in the same breath maintain that, although that company is in possession under a lease sanctioned by law, subject only to the regulatory power of the legislature acting through the board, and may peradventure be put to great expense because of the exercise of such power, still it is both reasonable and legal to eject Kennedy by administrative order with no allowance whatever as against petitioners. We are not impressed with this proposition. The direction for petitioners to bear any reasonable expense, &c., is not necessarily a direction that this be paid to Kennedy, and, assuming that it is, still it is only a short cut in a roundabout transaction. For if the railroad prefers to retain the Kennedy company as a tenant, which, within reasonable limits it has a right to do, the railroad would be asked to compensate the Kennedy company for interfering with its possession; and while it probably could not be said that the petitioners, as a condition of obtaining their spur, should have to answer over in full to the railroad for what it might have to pay to the Kennedy company, yet as between the petitioners and the railroad some allowance would have to be made, reasonable as to amount and terms; and, by the order, these two steps are taken in one. As we have said, no amount has been fixed, and it may be that the board will ultimately conclude that no allowance should be made. Touching what rearrangement, if any, is to be made, and the reasonable expense thereof, the order, as we have said, is silent. To the gen-

eral principle laid down in the order on that point we give our assent.

The judgment of the Supreme Court will be affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, KATZENBACH, LLOYD, GARDNER, VAN BUSKIRK, KAYS, HETFIELD, JJ.   9.

*For reversal*—THE CHIEF JUSTICE, MINTURN, McGLEN-NON, JJ.   3.